UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NEKEIA PULLINS | CIVIL NO. 19-00006 |
| V. | JUDGE SHELLY D. DICK |
| HANCOCK WHITNEY BANK | MAG. JUDGE ERIN WILDER-DOOMES |

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] by Defendant, Hancock Whitney Bank ("Defendant" or "Hancock"). Plaintiff, Nekeia Pullins ("Plaintiff"), has filed an *Opposition*,[2] to which Defendant *replied*.[3] Oral argument is not necessary. For the following reasons, the Court finds that Defendant's motion should be granted and that Plaintiff shall be granted leave of court to amend her *Complaint* in accordance with this *Ruling*.

**I.    FACTUAL BACKGROUND**

On January 4, 2018, Plaintiff visited a Hancock bank located on Airline Highway ("Airline branch") in Prairieville, Louisiana, in order to reopen an account and cash a settlement check.[4] Plaintiff wanted to cash the settlement check, leave with $1,000.00 in cash, and deposit the balance of cash into the reopened account. "Terry" with Hancock

---

[1] Rec. Doc. No. 6.
[2] Rec. Doc. No. 12.
[3] Rec. Doc. No. 15.
[4] Rec. Doc. No. 1, pp. 2-3.
9548

explained that he could do that.[5] Plaintiff also requested an ATM card, and she was told that she must wait 24 hours for "the system to update" to obtain a card.[6]

Later that afternoon, Plaintiff decided that she wanted to withdraw all of her funds from her Hancock account. She and her husband visited a different bank location on Bluebonnet Boulevard in Baton Rouge, Louisiana, ("Bluebonnet branch") with the intention of withdrawing the balance of funds that she had deposited earlier that same day. Upon arrival, she felt that the "assistant manager" was "staring at them", which she found to be "unnecessary".[7] Plaintiff was "greeted by an African American teller" who accepted Plaintiff's withdrawal slip and driver's license and "proceeded to process the transaction".[8] At that time, the "white assistant manager" told the teller that she would handle the transaction. The assistant manager advised Plaintiff that it would be a "minute or two".[9]

After a "longer than normal" amount of time had passed, the assistant manager informed Plaintiff that she contacted the Airline branch and was told that the deposit "was not cash"; therefore, Hancock could not proceed with the withdrawal.[10] The assistant manager then excused herself and returned with the Bluebonnet branch manager, who advised that the Airline branch had spoken with the attorney who issued the settlement check to Plaintiff. The attorney was unable to confirm that "he" issued a check to Plaintiff; therefore, a "hold" was put on the settlement check until the attorney confirmed that "he"

---

[5] Rec. Doc. No. 1, p. 3.
[6] *Id.*
[7] Rec. Doc. No. 1, p. 4.
[8] *Id.*
[9] *Id.*
[10] Rec. Doc. No. 1, p. 5.
9548

issued the check to Plaintiff. Plaintiff "knew" that someone was being "dishonest" because her attorney was female and her sister.[11] The situation became heated, and Plaintiff was "humiliated" and felt like she was "being treated like a criminal".[12]

Plaintiff's attorney arrived at the Bluebonnet branch in response to Plaintiff's request for assistance. Plaintiff's attorney advised the Bluebonnet branch manager that the Airline branch never called her, and she did not "authorize or instruct" the bank "to do anything regarding the account". Due to the time of day and the closing of the bank, the Bluebonnet branch manager advised that the "hold" would be lifted and that she could receive her funds the following morning. Additionally, the Bluebonnet branch manager told Plaintiff that she should have been issued an ATM card when she reopened her account.[13]

Plaintiff advised the Bluebonnet branch manager that she had experienced discrimination, with which the manager agreed. The Bluebonnet branch manager expressed that the Airline branch had mishandled the situation from the beginning, and the "lying" "escalated" the situation. The manager advised that she was going to file an internal complaint.[14]

Plaintiff filed suit against Hancock Whitney Bank on January 4, 2019. Plaintiff brings claims under federal and state law due to the Defendant's alleged discrimination based on race under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691;[15] alleged discrimination based on race under Title II of the Civil Rights Act of 1964 ("Title

---

[11] *Id.*
[12] Rec. Doc. No. 1, p. 6.
[13] Rec. Doc. No. 1, p. 7.
[14] *Id.*
[15] Rec. Doc. No. 1, p. 8.
9548

II"), 42 U.S.C. § 2000a;[16] in violation of 42 U.S.C. § 1981;[17] under the Louisiana Commission on Human Rights Act, (La. R.S. 51:2255);[18] in violation of La. R.S. 49:146;[19] and in violation of Louisiana tort law, La. C.C. art. 2315.[20] Defendant seeks dismissal of all claims under Federal Rule of Procedure 12(b)(6) due to Plaintiff's failure to state a claim upon which relief may be granted.[21]

## II. LAW AND ANALYSIS

### A. Motion to Dismiss under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[22] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[23] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[24] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

---

[16] Rec. Doc. No. 1, p. 9.
[17] Rec. Doc. No. 1, pp. 9-10.
[18] Rec. Doc. No. 1, p. 10.
[19] Rec. Doc. No. 1, pp. 10-11.
[20] Rec. Doc. No. 1, pp. 11-12.
[21] Rec. Doc. No. 6.
[22] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[23] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[24] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin,* 369 F.3d at 467).
9548

of the elements of a cause of action will not do."[25] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[26] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[28] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[29] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[30]

### B. Claims under the ECOA

The ECOA was legislated in response to creditors' unequal treatment towards women, minorities, and elderly persons. The relevant portion of the Act states that it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction … on the basis of race."[31] In order to state a claim for relief under the ECOA, Plaintiff's complaint "must plausibly allege that (1) [Plaintiff is] an 'applicant'; (2) [Defendant is] a 'creditor'; and (3) [Defendant] discriminated against [Plaintiff] with

---

[25] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "I*qbal*").
[27] *Twombly*, 550 U.S. at 570.
[28] *Iqbal*, 556 U.S. at 678.
[29] *Taha v. William Marsh Rice University*, 2012 WL 1576099, at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[30] *Twombly*, 550 U.S. at 556 (quoting *Papassan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[31] 15 U.S.C. § 1691(a).
9548

respect to any aspect of a credit transaction on the basis of the [P]laintiff's membership in a protected class."[32]

Under this statute, an "applicant" means "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit."[33] A "creditor" means "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."[34] Finally, the term "credit" means "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor."[35]

Some courts have required plaintiffs bringing discrimination claims under the ECOA to allege that: (1) she is a member of a protected class; (2) she applied for credit with the defendant; (3) she qualified for credit; and (4) she was denied credit despite being qualified.[36]

Defendant argues that Plaintiff has failed to state a claim upon which relief may be granted because Plaintiff failed to allege that she was an "applicant", that Defendant is a "creditor", and/or that Defendant engaged in a "credit transaction" with Plaintiff.

---

[32] *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705-06 (5th Cir. 2017), *cert. denied sub nom. Alexander v. AmeriPro Fundings, Inc.*, 138 S. Ct. 421 (2017). *See also, Jones v. Caliber Home Loans, Inc.*, Civ. A. No. 18-1023, 2019 WL 3366104, *4 (M.D. La. July 25, 2019).
[33] 15 U.S.C.A. § 1691a (b).
[34] 15 U.S.C.A. § 1691a (e).
[35] 15 U.S.C.A. § 1691a (d).
[36] *Jackson v. Bank of America*, 2017 WL 5635031, *2 (C.D. Calif. Mar. 9, 2017)(citing *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039, 1045 (N.D. Cal. 2009)).
9548

Defendant also argues that "cashing a check" is not a "credit transaction".[37] In opposition to Defendant's motion, Plaintiff relies upon the definitions of the terms at issue from *Black's Law Dictionary*, not the applicable statute, and argues that she is an applicant because she requested or applied for the services of the bank by seeking to open an account. Plaintiff further argues that Defendant is a creditor because it accepted her deposit and extended her credit to her checking account.[38] Plaintiff does not cite to any legal support for her argument, nor does she address the fact that her argument and allegations in support of same are not found in the *Complaint*.[39]

There is a dearth of jurisprudence within the Fifth Circuit representing claims similar to those alleged in the *Complaint* in the instant matter; however, the United States District Court for the Central District of California found that a plaintiff's claims of racial discrimination under the ECOA should be dismissed under Rule 12(b)(6) where the plaintiff requested that a bank cash checks totaling $720 million dollars. The bank refused to immediately do so. Plaintiff's claim failed because the plaintiff did not allege that he qualified for credit and there was no "credit transaction" under the ECOA. In fact, the allegations in the complaint did not show that the bank's conduct had "any relation to a debt, whether in allowing [p]laintiff to defer payments or incur debt." Therefore, the allegations did not survive a motion to dismiss.[40]

---

[37] Rec. Doc. No. 6-1, p. 9.
[38] Rec. Doc. No. 12, p. 7.
[39] To the extent Plaintiff seeks to amend her Complaint via her opposition by alleging new factual allegations that were not previously pled, the Court will not consider these allegations. The law is well-settled that arguments in a brief are not a substitute for properly plead allegations: "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Becnel v. St. Charles Par. Sheriff's Office*, Civ. A. No. 15-1011, 2015 WL 5665060, *1 n. 3 (E.D. La. Sept. 24, 2015)(quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F.Supp.2d 504, 566 (S.D. Tex. 2011)).
[40] *Jackson,* at *2-3.

The Court finds the Defendant's argument persuasive and the Ruling of the California District Court instructive. Plaintiff does not allege that Plaintiff qualifies as an "applicant" or that Defendant is a "creditor" in her Complaint. There are no allegations that Plaintiff applyied and qualified for credit and was then denied credit by Defendant. Further, Plaintiff does not allege that she engaged with Defendant regarding any deferred payment or any debt. In fact, Plaintiff only utilizes the term "credit" once in making the conclusory allegation, "Defendant has engaged in racial discrimination in respect to a credit transaction by purposely withholding the plaintiff's funds."[41] A bank withholding the disbursement of funds from a checking account within the first 24 hours of deposit is not a credit transaction. One conclusory allegation in support of a claim under the ECOA is not sufficient to withstand a challenge under Rule 12(b)(6).[42]

Having failed to plead a plausible claim under the ECOA, Plaintiff has failed to state a claim upon which relief may be granted under the ECOA. In its research the Court found no authority for the proposition that cashing a check is a credit transaction as contemplated by the ECOA. Therefor the Court finds that amendment of the Complaint would be futile. Accordingly, Plaintiff's claims under the ECOA shell be dismissed with prejudice.

### C. Claims under Title II

To succeed on a claim of discrimination under Section 2000a, Plaintiff must show that she "(1) is a member of a protected class; (2) attempted to exercise the right to full

---

[41] Rec. Doc. No. 1, p. 8.
[42] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also, Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)(citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
9548

benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class."[43] To be considered a place of public accommodation, the establishment must fall within the definitions established by Section 2000a(b).[44] Section 2000a(b) defines public establishments as "affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodgings; facilities principally engaged in selling food for consumption on the premises; gasoline stations; places of exhibition or entertainment; other covered establishments."[45] The examples of public accommodations provided in the statute include hotels, restaurants, and theaters.[46] Banks are not included.

There is no published authority in any circuit considering whether a bank is a "public accommodation" within the meaning of Title II. Although recognizing that unpublished district court decisions have no precedential value, district courts have considered the issue and have held that a bank is not a Title II public accommodation.[47] Courts have uniformly rejected the invitation to expand Title II "public accommodation" definition to include establishments beyond those specifically listed in Section 2000a(b).[48]

---

[43] *McCoy v. Homestead Studio Suites Hotels and HVI, Inc.*, 390 F.Supp.2d 577, 584-85 (S.D. Tex. 2005)(citing *LaRoche v. Denny's, Inc.*, 62 F.Supp.2d 1366, 1370 (S.D. Fla. 1999)).
[44] 42 U.S.C. § 2000a.
[45] 42 U.S.C. § 2000a(b).
[46] *Id.*
[47] *See Wilson v. Harding*, 1999 WL 203458, *2 (D. Kan. 1999)("[d]efendants, a bank and two of its employees, clearly are not covered by [Title II]"); *Terry v. Lasalle Nat'l Bank*, 1985 WL 4242, *3 (N.D. Ill. 1985)(dismissing Title II claims against bank); *Ajuluchuku v. Wachovia Corp.*, 2006 WL 406602, *3 (W.D. N.C. Feb. 17, 2006)("the [c]ourt concludes that neither the [d]efendant Wachovia Corporation generally nor its Howell Road branch is a "public accommodation" under 42 U.S.C. 2000a(b)", granting the motion to dismiss); *Allen v. American Advisors Group*, 2016 WL 9340249, *1 (N.D. Al. Nov. 7, 2016)("Allen pleads a violation of Title II of the Civil Rights Act of 1964, which prohibits discrimination in public accommodations … and does not fit the contention here that AAG denied him a reverse mortgage.").
[48] *See, e.g., Cuevas v. Sdrales*, 344 F.2d 1019, 1021 (10th Cir. 1965)("[m]any business establishments were not included within the scope of [42 U.S.C. § 2000a]"), *cert. denied*, 382 U.S. 1014, 86 S.Ct. 625, 15
9548

One of the bases for Defendant's motion seeking to dismiss Plaintiff's claims under Section 2000a is that a bank is not a place of public accommodation; therefore, Plaintiff failed to state a claim upon which relief may be granted.[49] Plaintiff disagrees in her opposition, relying on the definition of "commerce" under Section 2000a and wholly disregarding the definition of "public accommodation" under Section 2000a.[50] Plaintiff also argues that "other discrimination statutes" have found banks to be places of public accommodation.[51] While Plaintiff is generally correct, the "other discrimination statute" is Title III of the Americans with Disabilities Act ("ADA") which contains a much broader definition of "public accommodation", which specifically includes "banks".[52] The Court does not find that the definition of "public accommodation" under Title III of the ADA applies to Plaintiff's claims under Title II, especially considering that Title II provides its own governing definition of "public accommodation" under Section 2000a(b).

Based on the foregoing, the Court concludes that the Hancock branches at issue are places of public accommodation under Section 2000a. Plaintiff has not plead any facts that would distinguish Hancock from other banks and render it a "public accommodation" under the law. Also, it does not appear that Plaintiff could amend her

---

L.Ed.2d 528 (1966); and *Halton v. Great Clips, Inc.*, 94 F.Supp.2d 856, 862 (N.D. Ohio 2000)(hair salon in shopping center not public accommodation under 42 U.S.C. § 2000a, noting that "if Congress wanted to include, within the meaning of the statute, other types of establishments such as a service establishment, it could have amended Title II; after all, Congress had over three decades to do so").

[49] Rec. Doc. No. 6-1, pp. 10-11 (citing *Lowe v. ViewPoint Bank*, 2014 U.S. Dist. LEXIS 130361, *11 (N.D. Tex. Aug. 22, 2014)).

[50] Rec. Doc. No. 12, pp. 10-11.

[51] Rec. Doc. No. 12, p. 10 (citing *Leonard F. v. Israel Discount Bank of New York*, 967 F.Supp. 802 (S.D. N.Y., 1997), *vacated by Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99 (2nd Cir. 1999)(claims under Title III (ADA)); *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016)(claims under Title III (ADA)); and *Gniewkowski v. Lettuce Entertain You Enters., Inc.*, 251 F.Supp.3d 908 (W.D. Pa. 2017)(claims under Title III (ADA))).

[52] 42 U.S.C. § 12181(7)(F); *see also, Zaid v. Smart Financial Credit Union*, 2019 WL 314732, *5 (S.D. Tex. Jan. 24, 2019).

9548

*Complaint* to do so. Therefore, Plaintiff's claims against Defendant under Section 2000a shall be dismissed with prejudice.

### D. Claims under 42 U.S.C. § 1981

Title 42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts.[53] Section 1981 originally only covered conduct at the initial formation of a contract. It did not protect conduct that occurred thereafter. The statute was amended in 1991 to create a cause of action for conduct that occurs after the formation of a contract.

In order to establish a claim under Section 1981, a plaintiff must demonstrate that: (1) the plaintiff belongs to a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in the statute, which include the making and enforcing of contracts.[54] Plaintiff fails to detail the specific events underlying her Section 1981 claim and instead relies on conclusory allegations. She alleges, "Defendant has engaged in intentional racial discrimination by denying the Plaintiff full and equal benefit[s] in regards to the performance of its contract with the Plaintiff."[55] The Complaint fails to identify how Defendant "engaged" in discrimination, to identify the alleged "full and equal benefit[s]" that Plaintiff was denied, and to identify the contract at issue. Further, Plaintiff fails to specifically allege how Defendant breached a contract or failed to enforce a provision of a contract based on discriminatory motives.[56]

---

[53] *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295-96 (1976).
[54] *Green v. State Bar of Tex.,* 27 F.3d 1083, 1086 (5th Cir.1994).
[55] Rec. Doc. No. 1, p. 9.
[56] *See, e.g., Grambling Univ. Nat. Alumni Ass'n v. Board of Sup'rs for Louisiana System*, 286 F. App'x 864, 870 (5th Cir. 2008).
9548

Plaintiff argues in her opposition that the contract at issue is "the one created between the Plaintiff and the Defendant, upon the Plaintiff being allowed to open an account with the Defendant bank."[57] Plaintiff contends that there "are both implicit and expressed contractual obligations apparent with regard to a bank and an account holder's business relationship."[58] While Plaintiff makes these and other arguments in her opposition, she fails to allege same in her *Complaint*. The law is well-settled that arguments in a brief are not a substitute for properly plead allegations.[59]

For all of these reasons, the Court finds that Plaintiff's claims under Section 1981 should be dismissed. However, the Court will permit Plaintiff to amend her Complaint with regard to this claim. Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires."[60] In determining whether to grant leave, a court may consider several factors, including, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment...."[61] The "futility" of amendments to a complaint is measured by whether "the amended complaint would fail to state a claim upon which relief could be granted" under "the same standard of legal

---

[57] Rec. Doc. No. 12, p. 11.
[58] Rec. Doc. No. 12, p. 12.
[59] *Becnel*, 2015 WL 5665060, *1 n. 3.
[60] *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).
[61] *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 2d 222 (1962)).

9548

sufficiency as applies under Rule 12(b)(6)."[62] Moreover, "courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim."[63]

Plaintiff has not explicitly requested leave to amend; however, based on the foregoing and in the spirit of liberality contemplated by Federal Rule of Civil Procedure 15(a)(2), the Court shall finds that Plaintiff should be granted leave to amend her *Complaint* with regard to her claims under 42 U.S.C. 1981. The Plaintiff's claim under 42 U.S.C. 1981 shall be dismissed without prejudice.

### E. Claims under the Louisiana Human Rights Act, La. R.S. 51:2255

The Louisiana Human Rights Act makes it unlawful to engage in discriminatory practices in credit transactions.[64] Credit transactions under this statute include: (1) denying credit to any person; (2) increasing the charges or fees for or collateral required to secure any credit extended to any person; (3) restricting the amount or use of credit extended or impose different terms or conditions with respect to the credit extended to any person or any item or service related thereto; or (4) attempting to do any of the unlawful practices defined in Section 2255.[65] None of the enumerated examples of a credit transaction for purposes of La. Rev. Stat. 51:2255 are alleged in Plaintiff's *Complaint* or at issue in this matter.

---

[62] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (citations omitted).
[63] *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738, *12 (E.D. La. Oct. 14, 2014)(citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir. 2000)).
[64] La. R.S. 51:2255.
[65] La. R.S. 51:2255(A).
9548

Plaintiff "maintains that a credit transaction did exist" under La. Rev. Stat. 51:2255 and her "reasons run parallel with the reasons provided under her federal claims."[66] Plaintiff makes no additional argument and does not cite to any legal authority.

The Court specifically incorporates its discussion from above regarding the lack of "credit transactions" in this matter.[67] Based on the foregoing, the Court finds that Plaintiff fails to state a claim upon which relief may be granted under La. Rev. Stat. 51:2255 and dismisses Plaintiff's claims under this statute with prejudice.

### F.     Claims under La. R.S. 49:146

Louisiana Rev. Stat. 49:146 provides in pertinent part:

> A. (1) In access to public areas, public accommodations, and public facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical or mental disability.
>
> (2) For purposes of this Section, a public facility is defined as any publicly or privately owned property to which the general public has access as invitees and shall include such facilities open to the public as hotels, motels, restaurants, cafes, barrooms, and places of entertainment or recreation but shall not include any private club.

The key term in the statute is the word "access."[68] As the term is generally understood, "access" means the " 'ability to enter, ... [to] pass to and from, ... to obtain or make use of.' "[69] In determining whether a policy of access is in violation, a court must determine whether a "public area, accommodation or facility has a *policy* of discrimination that is

---

[66] Rec. Doc. No. 12, p. 13.
[67] *See* Section II(B) regarding the claims under the ECOA.
[68] *Robertson v. Burger King, Inc.*, 848 F.Supp. 78, 81 (E.D. La. Apr. 5, 1994).
[69] *Id.* (citing *Becnel v. City Stores Co.,* 675 F.2d 731, 734 (5th Cir.1982) (citation omitted)).
9548

arbitrary, capricious or unreasonable."[70] The party alleging the violation has the burden of establishing by a preponderance of the evidence that the policy is arbitrary, capricious, or unreasonable.[71]

Plaintiff has not alleged any facts that show Defendant had a policy or regulation that denies her access to Defendant's banks. In fact, by Plaintiff's own pleading, she was not denied access to either bank branch. She entered the Airline branch, reopened a checking account, cashed a check, and made a deposit. Later, she entered the Bluebonnet branch and alleges the details of extensive conversation with a teller, the assistant manager, and the branch manager. On these allegations alone, Plaintiff has failed to state a claim upon which relief may be granted for violation of La. R.S. 49:146.

Further, Defendant, a bank, does not meet the statutory definition of a "public facility" as defined in La. Rev. Stat. 49:146(A)(2). Plaintiff argues that her claims under La. Rev. Stat. 49:146 "run[] parallel to the federal civil rights claim of 42 U.S.C. § 2000a" and offers no additional argument or legal authority regarding whether a bank is a "public facility" under the statute.[72] The Court refers to its discussion of the meaning of "public accommodation" in Section II(C). Just like Plaintiff's claims under federal law and Title II, her claims under state law and La. Rev. Stat. 49:146 must fail as a bank is not included in the governing statute's definition of a public facility.

The Court finds that leave to amend would be futile, accordingly, the Plaintiff's claims under La. Rev. Stat. 49:146 shall be dismissed with prejudice.

---

[70] *Albright v. Southern Trace Country Club of Shreveport, Inc.* 2003–3413 (La.7/6/04),879 So.2d 121 (emphasis added).
[71] *Id.*
[72] Rec. Doc. No. 12, p. 14.
9548

### G. Claims under La. C.C. art. 2315

In her *Complaint*, Plaintiff alleges, "Defendant's discriminatory conduct, in violation of Louisiana [C]ivil [C]ode art. 2315, has caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to La. C.C. art. 2315."[73] This is the extent of Plaintiff's pleading of her claim under La. Civ. Code art. 2315, and it appears to the Court that Plaintiff is alleging that Defendant violated La. Civ. Code art. 2315 by discriminating against her based on her race. An individual claiming discrimination in a non-employment context may have a cause of action under La. Civ. Code art. 2315 for damages sustained due to an "offense or quasi-offense".[74] However, Plaintiff has not sufficiently plead her claim. She generally incorporates her factual allegations by reference, makes a conclusory allegation of "discriminatory conduct", and cites La. Civ. Code art. 2315. Such pleading is insufficient to state a claim for relief that is plausible on its face. For this reason alone, Plaintiff's claim should be dismissed.

In briefing both Defendant and Plaintiff argued that Plaintiff attempted to assert claims of negligent and intentional infliction of emotional distress pursuant to La. Civ. Code art. 2315.[75] However, the face of Plaintiff's *Complaint* does not suggest to the Court that Plaintiff asserted a claim of negligent or intentional infliction of emotional distress. To recover for intentional infliction of emotional distress, a plaintiff must show: (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional distress he

---

[73] Rec. Doc. No. 1, p. 11.
[74] *See, U.S. v. Morvant,* 843 F.Supp. 1092, 1095 (E.D. La. Jan. 26, 1994)("The Fifth Circuit has stated that because a federal civil rights action arises from the defendant's violation of a duty imposed by federal law, that action should be characterized 'as one sounding in tort – *i.e.*, an "offense or quasi-offense."'")(citing *Page v. U.S. Industries, Inc.*, 556 F.2d 346, 352 (5th Cir. 1977)); *see also, Overpeck v. Christ Episcopal Church*, 577 So.2d 364 (La.App. 1 Cir. 1991), *writ denied*, 580 So.2d 925 (La. 1991)(discrimination against a person with AIDS is an "offense or quasi-offense" within the meaning of La. Civ. Code art. 2315.1).
[75] Rec. Doc. No. 6-1, pp. 13-15; Rec. Doc. No. 12, pp. 15-17.
9548

suffered was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[76] Although Plaintiff argues these elements in her opposition,[77] Plaintiff's *Complaint* does not contains these same allegations or factual support for such a claim.[78] The Court will allow Plaintiff leave to amend her *Complaint*. Plaintiff's claims under La. Civ. Code art. 2315 shall be dismissed without prejudice.

## III. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[79] by Defendant, Hancock Whitney Bank, is **GRANTED.**

Plaintiff, Nakeia Pullins', claims under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 are DISMISSED with prejudice;

Plaintiff's claims under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, are DISMISSED with prejudice;

Plaintiff's claims under 42 U.S.C. § 1981are DISMISSED without prejudice;

Plaintiff's claims under the Louisiana Commission on Human Rights Act, La. R.S. 51:2255, are DISMISSED with prejudice;

Plaintiff's claims under of La. R.S. 49:146 are DISMISSED with prejudice;

Plaintiff's claims under La. C.C. art. 2315 are DISMISSED without prejudice.

---

[76] *Tatum v. United Parcel Service, Inc.*, 2007 WL 1799681, *4 (E.D. La. June 21, 2007)(citing *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)).
[77] Rec. Doc. No. 12, pp. 15-17.
[78] Rec. Doc. No. 1, pp. 11-12.
[79] Rec. Doc. No. 6.
9548

The Court herby grants Plaintiff leave of court to amend her *Complaint* within twenty-one (21) days of the date of this *Order* and in accordance with this *Ruling*.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana <u>March 25, 2020</u>.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**