## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

NEKEIA PULLINS                                     CIVIL NO. 19-00006

V.                                                        JUDGE SHELLY D. DICK

HANCOCK WHITNEY BANK                       MAG. JUDGE ERIN WILDER-
                                                          DOOMES

## RULING

This matter is before the Court on the second *Motion to Dismiss*[1] by Defendant, Hancock Whitney Bank ("Defendant").  Plaintiff, Nekeia Pullins ("Plaintiff"), has filed an *Opposition,*[2] to which Defendant filed a *Reply.*[3]  For the following reasons, the Court finds that Defendant's motion should be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

Plaintiff, an African-American female, filed her original *Complaint* against Defendant on January 4, 2019, alleging that Defendant discriminated against her on the basis of her race by requiring her to wait one business day after depositing funds before allowing her to withdraw those funds. Plaintiff's original *Complaint* further alleged that Defendant's conduct violated the: (1) Equal Credit Opportunity Act ("ECOA") (15 U.S.C. § 1691); (2) discrimination in public accommodation (42 U.S.C. §2000a); (3) discrimination in contract performance/enforcement (42 U.S.C. § 1981); (4) Louisiana

---

[1] Rec. Doc. No. 22.
[2] Rec. Doc. No. 29.
[3] Rec. Doc. No. 32.
[4] The Court adopts by reference the detailed factual background set forth in the Court's previous *Ruling*, Rec. Doc. No. 16.

64680                                                                                        1

ECOA statute (La. R.S. 51:2255); (5) Louisiana—discrimination in public accommodation (La. R.S. 46:146 ); and (6) La. C. C. art. 2315.

Defendant moved to dismiss the original *Complaint* pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, and on March 25, 2020, the Court dismissed all of Plaintiff's claims with prejudice except those brought under 42 U.S.C. § 1981 and La. C.C. art. 2315.  These claims were dismissed without prejudice, and Plaintiff was granted leave to amend.[5]

Plaintiff subsequently filed an *Amended Complaint* alleging many of the same facts as in the original *Complaint* to support her claims under 42 U.S.C. § 1981 and intentional infliction of emotional distress ("IIED") under La. C.C. art. 2315.[6]  Plaintiff alleges that, on or about January 4, 2018, she entered the Hancock Whitney branch at 17257 Airline Highway in Prairieville, Louisiana, to reopen a checking account and deposit a lawsuit settlement check in the amount of $8,456.16.[7] Plaintiff alleges that later that same day, at about 4:00 pm, she entered a different Hancock Whitney branch on Bluebonnet Blvd in Baton Rouge, Louisiana, attempted to withdraw all of the money deposited earlier that day at the Prairieville branch, and asked to close the newly opened account.[8]

Plaintiff further alleges that, upon her request to withdraw the funds deposited earlier that day, the assistant manager of the Bluebonnet branch ("Tina"), made a phone call and then advised Plaintiff that she contacted the Prairieville branch where the account was opened earlier that day, and because the deposit was not a cash deposit, Plaintiff

---

[5] Rec. Doc. No. 16.
[6] Rec. Doc. No. 21.
[7] *Id.* at ¶ 1.
[8] *Id.* at ¶¶ 5-6.
64680                                                                                                    2

could not withdraw all of the money from the account that day.[9]  Plaintiff asserts that, after being questioned, Tina went to meet with the Bluebonnet branch manager, Nicole Perret ("Perret"), and Tina returned with Perret to advise Plaintiff that she spoke with Kerry Coughlin, the Prairieville branch manager ("Coughlin"), and that, according to Perret, Coughlin stated that he spoke with the attorney who issued the settlement check, and that the attorney (allegedly described as a "he") was unable to verify that "he" issued Plaintiff the check and that "he" had to look at his ledger.[10] Plaintiff claims Perret advised that Coughlin said a hold was put on the account "until the attorney verified and confirmed this."[11] Plaintiff claims this could not be true because the attorney was not only female but also Plaintiff's sister.[12]

Plaintiff further claims she was embarrassed because the other people in the branch heard this conversation and Perret "insinuated" Plaintiff was attempting to defraud the bank.[13]  Plaintiff alleges she "felt humiliated and embarrassed as a result of being treated like a criminal" when "a hold was placed on the account until they could verify that the check was a legitimate check and that Plaintiff was the intended payee."[14]  Further, when Plaintiff accused Perret of being dishonest, Perret allegedly "began yelling at [Plaintiff] and telling her that she could get out if she was not going to let her help."[15] Plaintiff further alleges Perret invited Plaintiff into her office, and Tina "approached Perret's office door and asked if Perret needed her to call the police," but "Perret waived

---

[9] *Id.* at ¶¶ 7-8.
[10] *Id.* at ¶ 9.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 11.

64680                                                                                                          3

[Tina] away and told her to wait."[16]

Plaintiff alleges that, at around 6 pm that evening, while Plaintiff was still in Perret's office, Plaintiff's attorney called Plaintiff, who put the attorney on speakerphone at Perret's request.  Perret allegedly advised Plaintiff's attorney that Perret had been trying to contact the attorney, and Plaintiff's attorney advised that she was on her way to the Bluebonnet branch.[17]  Following this call, Perret allegedly tried to call Coughlin in the Prairieville branch to have him release the hold placed on the funds, but Coughlin had left for the day; however, Perret allegedly advised Plaintiff that she would make sure the hold was released and the funds available by 8:30 am the following morning.[18]  Plaintiff alleges that Perret ultimately told Plaintiff that Perret was "extremely disappointed" at how Coughlin handled the situation, and that Perret believed Plaintiff had been subjected to discrimination.[19]  Plaintiff argues these allegations support her 42 U.S.C. § 1981 and La. C.C. art. 2315 intentional infliction of emotional distress claims.

## II.    PARTIES' ARGUMENTS, GENERALLY

Defendant again moves to dismiss these claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.   Defendant contends the Deposit Agreement between it and Plaintiff, the Expedited Funds Availability Act (the "Funds Act") (12 U.S.C. §§4001-10), and Regulation CC (12 C.F.R. §201, *et seq.*) all expressly permit Defendant to require Plaintiff to wait one business day before being allowed to withdraw a deposit.  Because Plaintiff alleges that Defendant waited one day to allow Plaintiff to withdraw the deposit from the newly opened account, which the contract and the

---

[16] *Id.*
[17] *Id.* at ¶ 12.
[18] *Id.* at ¶¶ 13-14.
[19] *Id.* at ¶¶ 16-17.

64680                                                                                                    4

regulations set forth expressly require, Plaintiff has failed to allege any breach of contract or discrimination in executing the Deposit Agreement. Rather, "Plaintiff merely alleges that HW complied with the Deposit Agreement and the applicable banking regulations."[20] Citing applicable jurisprudence, Defendant argues that "Plaintiff's subjective belief of discrimination 'is insufficient to create an inference of the defendant['s] discriminatory intent.'"[21] Thus, Plaintiff's 42 U.S.C. §1981 should be dismissed with prejudice.

As to Plaintiff's claim of intentional infliction of emotional distress, Defendant avers that Plaintiff's allegations also fail to support this claim. Defendant maintains Plaintiff failed to allege that its conduct in complying with the Deposit Agreement and banking regulations was extreme and outrageous conduct; that Plaintiff suffered emotional distress because Defendant adhered to the Deposit Agreement and banking regulations; or that Defendant desired to inflict severe emotional distress or knew that severe emotional distress was substantially certain to result from adherence to the Deposit Agreement and banking regulations.

Plaintiff opposes this motion, arguing that she has adequately alleged facts to support these claims. Plaintiff states:

> Pursuant to § 1981, Plaintiff argues that HW exercised "intentional racial discrimination by denying the Plaintiff full and equal benefit in regards to the performance of its contract with the Plaintiff." Plaintiff further argues that HW's racially discriminatory conduct "caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to La. C.C. art 2315."[22]

Plaintiff recounts the facts set forth above and highlights the allegation that Perret agreed with Plaintiff that she had been discriminated against and advised Plaintiff that she should

---

[20] Rec. Doc. No. 22-1, p. 2.
[21] *Id.* (quoting *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) (internal citations omitted)).
[22] Rec. Doc. No. 29, p. 2 (quoting Rec. Doc. No. 21, ¶ 2).

file a complaint with the bank.[23]   Plaintiff maintains the allegations set forth in her *Amended Complaint* survive Defendant's motion.

Defendant replies to Plaintiff's arguments, stating that she has offered merely conclusory allegations that fail to support her claims, and Plaintiff's allegations confirm that Defendant acted in accordance with the Deposit Agreement.   Additionally, Defendant notes that the Court must only consider the allegations in Plaintiff's *Amended Complaint* and not additional allegations raised for the first time in her *Opposition*.  The Court agrees. "[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[24]  Any factual allegations asserted in Plaintiff's *Opposition* that do not appear implicitly or explicitly in her *Amended Complaint* shall not be considered for purposes of this *Ruling*.

## III.    LAW AND ANALYSIS

### A.    Motion to Dismiss under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[25]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[26]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state

---

[23] *Id.* at pp. 2-5 (citing Rec. Doc. No. 21, pp. 8-9).
[24] *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (collecting cases)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," a court should not consider allegations that appear for the first time in plaintiffs' briefing. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).
[25] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[26] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

64680                                                                                                    6

a claim to relief that is plausible on its face.'"[27]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[28]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[29]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[31]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[32]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[33]

## B.    The Deposit Agreement and Banking Regulations

As an initial matter, Defendant contends it complied with the Deposit Agreement and appliable banking regulations; thus, Plaintiff has failed to establish a predicate for any of her claims. Defendant argues that, since Plaintiff alleges that the funds were made

---

[27] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin,* 369 F.3d at 467).

[28] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "I*qbal*").

[30] *Twombly*, 550 U.S. at 570.

[31] *Iqbal*, 556 U.S. at 678.

[32] *Taha v. William Marsh Rice University*, 2012 WL 1576099, at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[33] *Twombly*, 550 U.S. at 556 (quoting *Papassan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

64680

available to her on the next business day after the deposit, "she merely alleges that HW complied with the agreement between the parties and applicable federal banking regulations. Having failed to allege that HW did anything wrong, Plaintiff has failed to allege any predicate underlying any cognizable claim against HW."[34]

The Deposit Agreement is the governing contract between the parties.  In this agreement, the Parties agreed that Defendant's "policy is to make funds from your deposits available to you on the first business day after the day we receive your deposit . . . Once the funds are available, you can withdraw them in cash. . . [.]"[35] The Agreement further provides: "For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. If you make a deposit before our designated business day cut-off hour on a business day that we are open, we will consider that the day of your deposit . . . Our business day cut-off hour may vary by branch location, but it will never be earlier than 2:00 P.M. CST."[36]

Defendant notes that these terms mirror federal banking regulations set forth in the Funds Act and Regulation CC.  Specifically, Section 229.10(c)(1)(vi) of Regulation CC provides: (1) General Rule. A depositary bank shall make funds deposited in an account by check available for withdrawal not later than one business day after the banking day on which the funds are deposited, in the case of—(vi) A check deposited in a branch of

---

[34] Rec. Doc. No. 22-1, p. 7.

[35] Rec. Doc. No. 22-2, p. 25. In general, the Court may only consider the pleadings and any attachments to the pleadings. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). However, courts may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to a plaintiff's claim because the documents merely assist the plaintiff in establishing the basis of the suit and the court in making the basic determination if plaintiff has stated a claim. *Id.* at 498–99. Although the Plaintiff did not explicitly name the Deposit Agreement in her *Amended Complaint*, she refers to the contract between she and the Defendant numerous times, and the Deposit Agreement is the governing contract between the Parties in this matter.

[36] *Id.*

the depositary bank and drawn on the same or another branch of the same bank if both branches are located in the same state or the same check processing region."  Thus, Plaintiff's own allegations confirm that Defendant complied with the Deposit Agreement, the Funds Act, and Regulation CC in providing her funds the following business day after the deposit.[37]  Defendant posits:  "[S]ince … Plaintiff has failed to allege HW did anything wrong, the predicate for all of Plaintiff's claims is premised on lawful activity, and Plaintiff has failed to state a claim on any count."[38]

Plaintiff acknowledges that the Deposit Agreement and bank regulations provide for this delay in providing funds.  However, Plaintiff argues that the "true nature" of the hold was not pursuant to the Deposit Agreement or banking regulations but "because she was an African American woman attempting to withdrawal cash from a large settlement check and this appeared suspicious to the Defendant."[39]  In other words, Defendant's conduct in enforcing the terms of the Deposit Agreement was not motivated by the legal reason to delay; rather, they delayed based on an illegal motivation – her race.

The Court agrees with Defendant.  The reasoning and analysis of the United States District Court for the Northern District of Georgia in *Benton v. Cousins Properties, Inc.*[40] is persuasive in this case.  In *Benton*, the plaintiff asserted a claim under Section 1981 alleging race discrimination in the formation and performance of contracts regarding rental of a conference room from hotel for a holiday bazaar.  The plaintiff claimed that the

---

[37] Alternatively, Defendant provides justification for the waiting period under two other regulations; however, based on the Court's findings, the Court need not address these alternative arguments.
[38] Rec. Doc. No. 22-1, p. 10.
[39] Rec. Doc. No. 29, p. 7.
[40] 230 F.Supp.2d 1351 (N.D. Ga. 2002)(*aff'd* 97 Fed. Appx. 904 (11th Cir. 2004).  Although *Benton* was determined at the summary judgment stage, the Section 1981substantive legal principles applied therein also apply to the fact of this case.

hotel "deprived her of the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship that she had with Marriott when she arranged to rent a conference room from Marriott for the holiday bazaar."[41]

> The gravamen of plaintiff's claim is that, although Marriott honored the literal terms of its written agreement with plaintiff, in that it did provide a conference room for her to use for the holiday bazaar, the Marriott and Cousins defendants acted together to deprive the plaintiff of the customary benefits and privileges that were typically provided to white persons who rented conference rooms at the Plaza and that these defendants did so because plaintiff is black. Specifically, plaintiff complains that she was denied the use of the loading dock and elevators, that she was denied use of telephones in the conference room, and that defendants were unduly restrictive in allowing her to distribute flyers promoting her event. Plaintiff's overriding complaint is that the defendants were rude to her and, more particularly, that defendant Marriott repeatedly hassled her in an effort to get her to pay for the additional janitorial and security services that would be required as a result of the size of plaintiff's planned event.[42]

The *Benton* court, citing United States Supreme Court precedent, noted that "a Section 1981 claim requires a showing both of an *actus rea*—that is, a failure to perform a contractual obligation—and a *mens rea*—non-performance as a result of an intention to discriminate racially.[43]  In other words, the court explained that "the plaintiff must show that the defendants actually did something wrong before she can call on a court to gauge whether there was any racial motivation behind their actions."[44]  The court ultimately concluded that that hotel did not violate any of its contractual obligations; thus, it did not deny the plaintiff any benefits of her contract:  "plaintiff's claim fails, independent of any exploration of the subjective racial views of Marriott personnel."[45]

---

[41] *Id.* at 1368.
[42] *Id.* at 1368-69.
[43] *Id.* at 1369 (citing *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (Section 1981 "can be violated only by purposeful discrimination")).
[44] *Id.* at 1371.
[45] *Id.* at 1373.

For the reasons set forth above, the same outcome is warranted here.  According to Plaintiff's own allegations, Defendant complied with the terms of the Deposit Agreement, and she received access to her funds within the timeline provided for therein. Therefore, Plaintiff's Section 1981 claim fails, "independent of any exploration of the subjective racial views" of Defendant's employees.  Alternatively, the Court also finds Plaintiff's *Amended Complaint* is subject to dismissal for the reasons set forth below.

### C.   Claims under 42 U.S.C. § 1981

Pursuant to 42 U.S.C. § 1981, all persons within the jurisdiction of the United States have the same rights, regardless of race, to enter into and enforce contracts, including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[46] "[A] plaintiff bears the burden of persuading the court that [he/she] has established a prima facie showing of race discrimination."[47] To establish a *prima facie* case under § 1981, a plaintiff must show that "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute."[48] A plaintiff may rely on circumstantial evidence to establish that the defendant had a discriminatory motive.[49]  Plaintiff clearly satisfies the first prong of the analysis, so the Court will move to the remaining prongs.

---

[46]  42 U.S.C. § 1981(a)-(b).
[47] *Monteverde v. New Orleans Fire Dept.*, 124 Fed. Appx. 900 (5th Cir. 2005) (citing *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000)).
[48] *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir.1997).
[49] *Id.*

64680                                                                                              11

1.  <u>Intent to Discriminate Based on Race</u>

In her *Amended Complaint*, Plaintiff alleges that Defendant "engaged in intentional racial discrimination by denying the Plaintiff full and equal benefit in regards to the performance of its contract with the Plaintiff" in violation of 42 U.S.C. § 1981.[50] Specifically, Plaintiff alleges the following as to Defendant's racially discriminatory intent:

> The Defendant's actions were clearly motivated by discriminatory intent, as indicative the Defendant using the above-referenced false and misleading statements under the premise that the Plaintiff was attempting to defraud the bank, instead of identifying legitimate and permissible banking safeguards as the reason, in order to cover up its true non-permissible discriminatory motives, resulting in the denying of the Plaintiff's access to the funds in Plaintiff's account simply because she was African American. Specifically, Plaintiff was the only African American customer in the bank who was singled out and whose transaction appeared suspicious and in need of investigation. Moreover, Defendant felt the need to discuss its issue with Plaintiff's transaction in front of everyone in the bank without discretion. Defendant yelled at Plaintiff and told Plaintiff that she could "get out" if she did not want to receive help, while disregarding Plaintiff's legitimate concerns as to the illegally prompted investigation of Plaintiff's account and while Plaintiff remained in front of everyone else in the bank, including other customers. Plaintiff alleges that the actions of the Defendant in providing her false assertions as to why she could not receive the funds from her account, is indicative of the Defendant's deceitful and discriminatory intent[.][51]

Defendant argues that Plaintiff has alleged only her subjective belief that the conduct of its employees was motivated by race discrimination in denying her access to her funds. Defendant maintains these generalized allegations are not specific enough to plead discriminatory intent. Defendant points out that Plaintiff does not allege that other non-minority customers in the bank were allowed to withdraw funds from a new account on the same day the funds were deposited.  Rather, according to Defendant, Plaintiff's

---

[50] Rec. Doc. No. 21, Count I, p. 11.
[51] *Id.* at pp. 11-12.

64680

allegations of discriminatory intent are purely speculative, and she acknowledges that Defendant had the contractual right to delay releasing the funds on the same day the account was opened.

Plaintiff counters Defendant's argument, claiming that "[t]he underpinning of [her] claims is not merely that the Defendant waited until the following day to grant access to the money in her account"; rather, Plaintiff argues that the alleged conduct of Defendant's employees throughout the incident state a claim for race discrimination.  Plaintiff avers that she has alleged that Defendant's employees were dishonest as to the reason for the hold and falsely claimed that there were "red flags" that prompted the hold.[52]  Plaintiff further contends that, "even if the client agreement establishes a loophole to support the Defendant illegally placing a hold on the Plaintiff's account, it was still used as a pretext for discrimination."[53]

Plaintiff cites to *Roberson v. Alltell Information Services*, a case decided on summary judgment, and attempts to distinguish the case at bar from *Roberson.*  However, the *Roberson* court was addressing the record evidence under a different standard and is inapposite to the standard applied in this matter.  Further, Plaintiff claims that Defendant "attempts to offer a permissible reason for its decision to arbitrarily and illegally place a hold on the Plaintiff's account," but "this reason is pretext to cover up the Defendant's true illegal and discriminatory motives."[54]  Plaintiff makes arguments regarding proof; however, proof is irrelevant on a Rule 12(b)(6) motion.  Plaintiff contends that Defendant never provided Plaintiff with the only permissible reason to deny her funds – the Deposit

---

[52] *Id.* at p. 21.
[53] Rec. Doc. No. 29, p. 12 (emphasis in original).
[54] Rec. Doc. No. 29, p. 10.

64680                                                                                                      13

Agreement – but only gave her false reasons for the hold.  Plaintiff contends that this alleged fact, coupled with the allegation that no other non-African American customers were treated in this manner in receiving service from the bank, allows the Court to infer from the pleadings an allegation of racially discriminatory intent.

Defendant responds that "[s]taring at someone, telling someone they can get out if they don't want to receive help, and managers offering conflicting statements regarding why someone was denied access to her funds do not constitute facts sufficient to show that HW's actions were motivated by discriminatory intent."[55]  Defendant cites *Brooks v. Pizza Hut, Inc.*, wherein the district court for the Eastern District of Louisiana held that, to state a claim for relief under Section 1981, a "plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief."[56]

The Court notes the standard to evaluate this claim:

Although "naked allegation[s]" of discriminatory intent are too conclusory to survive a motion to dismiss, *see Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc), discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence, *Bellows*, 118 F.3d at 274. An allegation that similarly situated non-minorities received better treatment "could create the necessary inference and set the predicate for establishing the section 1981 claim." *See Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993) (unpublished); *cf. Lindsay v. Yates*, 498 F.3d 434, 439–40 (6th Cir. 2007) (holding that plaintiffs-purchasers pleaded a § 1981 claim by alleging that (1) sellers advertised their house for sale; (2) plaintiffs signed a purchase agreement and made deposit; and (3) sellers terminated the contract three weeks after signing agreement and one day after agent learned buyers were black).[57]

The Court finds that Plaintiff's allegations of racially discriminatory intent are largely subjective and insufficient to state a claim.  Taking Plaintiff's allegations as true for

---

[55] Rec. Doc. No. 32, p. 31.
[56] 1992 WL 245668, * 2 (E.D. La. Sept. 14, 1992)(quoting *Bray v. RHT Inc.*, 748 F.Supp. 3, 5 (D.D.C.1990)).
[57] *Body by Cook, Incorporated v. State Farm Mutual Automobile Ins.*, 869 F.3d 381, 387.

purposes of this motion, the picture painted by Plaintiff demonstrates allegedly rude and unprofessional behavior on the part of Defendant's employees.  Plaintiff bemoans the fact that Defendant has not offered an explanation for the "inconsistences with regard to the aforementioned false reason provided to Plaintiff"; however, at the Rule 12(b)(6) stage, Defendant does not have this burden.  It has challenged the sufficiency of the allegations in Plaintiff's *Amended Complaint*, and the Court must only look to those allegations to resolve this motion.

Further, the Court is unpersuaded that Plaintiff's allegation that the non-minority customers at the bank that day were not denied bank services or treated in the same manner as she is indicative of discriminatory intent.  While it is true that "[a]n allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim,'" Plaintiff has not alleged that the non-minorities were similarly situated.  Simply being in the bank as a customer and not having an altercation with bank employees does not properly allege that these non-minorities were similarly situated.  Rather, an allegation that non-minority customers sought the same services – being provided new account funds prior to the requisite 24-hour delay – and received different treatment/results would allow an inference of race discrimination.  Plaintiff makes no allegations regarding the nature of the services sought by the allegedly similarly situated non-minority customers; thus, there are no factual allegations to support Plaintiff's claim that her race motivated the alleged interference with her contractual rights.

Borrowing from Title VII jurisprudence,[58] to show that a similarly situated non-minority was treated differently and that the difference in treatment is a pretext for discrimination, the conduct at issue must be "nearly identical."[59] Courts within the Fifth Circuit define "similarly situated" narrowly.[60]  As discussed above, Plaintiff has not alleged facts that non-minority bank customers were treated more favorably in "nearly identical" circumstances.

Plaintiff relies on a 2003 decision by the federal district court in Oregon in *Allen v. U.S. Bancorp*, wherein an African American bank customer sued his bank under Section 1981, alleging that he was subjected to race discrimination when trying to make a business deposit.[61]  Specifically, the plaintiff alleged that a teller stared at him suspiciously when he entered the bank; that a bank supervisor required him to remove his sunglasses while in the bank when a white customer was in the bank conducting business while wearing sunglasses; and when he reached the front of the business line, he was told he needed to move to the back of the line for personal transactions.[62]  Finding that the plaintiff had sufficiently alleged facts supporting an inference of racial discrimination, the court stated: "Defendant's contractual obligations to plaintiff are not satisfied merely because plaintiff was ultimately able to deposit his check. Plaintiff's contractual expectation included the right to receive service on the same time line as other customers."[63]

---

[58] The elements of a racial discrimination claim are the same, whether the claim is asserted under Section 1981 or Title VII.  *Franklin v. City of Slidell*, 936 F.Supp.2d 691, 705 (E.D. La. 2013)(citing *Riley v. School Bd. Union Parish*, 379 Fed.Appx. 335, 339 (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir.2004)); *Lockett v. Wal–Mart Stores, Inc.*, 337 F.Supp.2d 887, 891 (5th Cir.2004)).

[59] *Moore v. Angus Chemical Co.*, 2008 WL 4491592 at *5 (W.D. La. Oct. 1, 2008)(citations omitted).

[60] *See Horton v. G4S Secure Solutions (USA), Inc.*, No. 16-544-SDD-EWD, 2018 WL 1997535 at *5 (M.D. La Apr. 27, 2018)(citing *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012; *see also Lopez v. Kempthorne,* 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010)).

[61] *Allen v. U.S. Bancorp*, 264 F. Supp.2d 945, 947-48. (D. Oregon 2003).

[62] *Id.*

[63] *Id.* at 950.

64680

16

Plaintiff claims that, as in *Allen*, she also had an expectation to "receive service on the same time line as other customers." Plaintiff maintains that it is not enough that she eventually received her funds because the "additional restrictions" imposed on her, because of her race, in order to receive service, violated Section 1981. However, Plaintiff's allegations are easily distinguished from those in *Allen*. The plaintiff in *Allen* was similarly situated to the other bank customers in the business and personal transaction lines, both in the nature of the business sought to be conducted with the bank and the fact that some were wearing sunglasses. As discussed above, Plaintiff's allegations do not allow an inference that she was similarly situated to all other customers in the bank. Plaintiff would be similarly situated if she alleged that a non-minority customer was at the bank to conduct the same business as Plaintiff, pursuant to the same terms of a Deposit Agreement, but was allowed to access funds on the same day as the opening of an account and deposit of a check in an amount over $5,000.00. No such allegation has been made. Although Plaintiff claims she was subjected to the additional restriction of having to remain in the bank for several hours to receive the same services as other customers who were not delayed, there are no facts alleged in the *Amended Complaint* to support a claim that all other bank customers sought the "same services" as she.

Plaintiff likens the facts of this case to those in *Craig v. US Bancorp*,[64] a case also decided by the Oregon federal district court, calling the facts "identical" to those asserted in the present case.[65] However, the facts alleged in *Craig* are also easily distinguished

---

[64] 2004 WL 817149 (D. Oregon, Apr. 14, 2004).
[65] Rec. Doc. No. 29, p. 13.

64680

from those alleged by Plaintiff herein.  In *Craig*, the African American plaintiff attempted to cash a $50 check drawn on his attorney's bank account.  The bank allegedly refused to cash the check, even though the plaintiff submitted proper identification, and began a "fraud" investigation, purportedly calling the plaintiff's attorney to confirm that the check should be cashed.  The plaintiff alleged that his attorney did not recall any phone call of this nature, and the phone records did not demonstrate that this call was made; nevertheless, after an hour of waiting, the bank ultimately denied service by refusing to cash the check. The plaintiff's attorney called the bank and straightened out the situation, and the plaintiff returned to the bank, which then cashed the check.  Following this incident, the plaintiff's attorney sent two white clients to the same bank to cash checks from the same account; "[b]oth clients were able to cash the checks without incident, delay, or any mention of a 'fraud' investigation."[66]

The court rejected the bank's argument that there was no contractual relationship between the parties, finding that "a broad interpretation of the Civil Rights Act is consistent with both its plain language and its goal of racial equality in the marketplace."[67]  The court acknowledged that "other courts have dismissed section 1981 claims where defendants' behavior perhaps degrades but does not completely deny service."[68]  However, the court noted that "an exception to the general 'rule' regarding substandard service exists if and

---

[66] *Id.* at * 1.

[67] *Id.* at *5 (citations omitted).

[68] *Id.* at *3 (citing *e.g., Morris*, 89 F.3d at 413 (upholding summary judgment for defendant because plaintiffs "were denied neither admittance nor service, nor were they asked to leave"); *Jeffrey v. Home Depot U.S.A., Inc.*, 90 F.Supp.2d 1066 (S.D.Cal.2000) (granting summary judgment in favor of defendant even though purchase at check-out counter was delayed by request to search bag); *Harrison v. Denny's Restaurant, Inc.*, 1997 U.S. Dist. LEXIS 5637, 1997 WL 227963 (N.D.Cal.1997) (granting summary judgment in favor of defendant because plaintiff eventually received his food albeit slower than non-minority customers)).

64680

when additional conditions are imposed on the terms or benefits of contract formation."[69] In denying the bank's motion to dismiss the Section 1981 claim, the court noted that, "[t]o support his claim, Craig relates facts showing differential treatment, including first a denial and then a long delay in services, as compared to **similarly situated Caucasian clients**."[70]

Notwithstanding the fact that decisions from the Oregon federal district court are not binding upon this Court, the *Craig* case again highlights Plaintiff's failure to plead facts that she received differential treatment based on her race than similarly situated non-minority bank customers. First, the *Craig* case did not involve allegations that the plaintiff attempted to receive a service to which he was not entitled pursuant to the clear terms of an established governing contract. Second, and importantly, the plaintiff in *Craig* alleged facts demonstrating that similarly situated white customers, who sought the exact same service as Craig in the exact same manner, were treated differently. As set forth at length above, Plaintiff has alleged no facts that a white bank customer attempted to and ultimately gained access to funds under the same Deposit Agreement terms as Plaintiff.

More applicable to this case is the Fifth Circuit's *Body by Cook* decision – which is binding on this Court - relied upon by Defendant. In *Body by Cook*, an automotive repair shop and its owner brought suit alleging that insurance companies refused to allow the shop to participate in their direct repair programs because of owner's race, in violation of

---

[69] *Id.* (citing *e.g., Joseph v. New York Yankees P'shp*, 2000 WL 1559019, 2000 U.S. Dist Lexis 15417 (S.D.N.Y.2000) (plaintiff forced to change clothing before gaining entry to restaurant); *Bobbitt v. Rage, Inc.*, 19 F.Supp.2d 512 (W.D.N.C.1998) (plaintiffs required to pre-pay for their food); *Washington v. Duty Free Shoppers, Ltd.*, 710 F.Supp. 1288 (N.D.Cal.1988) (African Americans required to show passport to enter store whereas white patrons suffered no such restrictions)).
[70] *Id.* at * 4 (emphasis added).

64680

Section 1981.[71]  The Fifth Circuit upheld the district court's dismissal as to the majority of defendants, holding:  "Plaintiffs make only generalized allegations regarding Defendants' alleged disparate treatment of Body by Cook versus non-minority-owned shops. These allegations are not specific enough to plead discriminatory intent. They fail to identify … specific instances when Body by Cook was refused a contract but a similarly situated non-minority owned body shop was given a contract.[72]  The same is true of Plaintiff herein as to allegations that that non-minority bank customers were similarly situated.  The Court finds that Plaintiff's allegations do not state a claim under this prong of the analysis. Alternatively, if Plaintiff had pled allegations of racially discriminatory intent, Plaintiff's allegations would still fail to satisfy the third prong of this analysis, as set forth below.

2. <u>Discrimination Concerned the Making and Enforcing of a Contract</u>

Defendant also challenges Plaintiff's allegations that purport to satisfy the requirement that the alleged race discrimination concerned the making and enforcement of a contract.  Defendant quoted the salient allegations relating to this claim:

- "A contract by mandate was created between the Plaintiff and the Defendant when the Plaintiff opened a banking account with the Defendant and deposited money." R. Doc. 21 (Amended Complaint, Count 1, p. 12).

- "[I]mplicit and expressed contractual obligations were created between the parties." R. Doc. 21 (Amended Complaint, Count 1, p. 12).

- "Defendant breached the contract when it hindered the performance of its contractual obligations by prohibiting the Plaintiff from having access to the funds in her bank account." R. Doc. 21 (Amended Complaint, Count 1, p. 12).

- "[W]hen the Defendant refused to allow the Plaintiff access to her account, it modified the terms and conditions of the created contract by mandate between the parties, whereby the Plaintiff would be entitled to her funds upon demand." R. Doc. 21 (Amended Complaint, Count 1, p. 12).

---

[71] 869 F.3d at 387.
[72] *Id.* (citing *Hall v. Cont'l Airlines, Inc.*, 252 Fed.Appx. 650, 653–54 (5th Cir. 2007) (unpublished)).

64680

• "Defendant hindered the Plaintiff from enjoying all benefits, privileges and terms and conditions of the contract by mandate when it placed a hold on the Plaintiffs' account and prevented the Plaintiff from having access to her funds on demand." R. Doc. 21 (Amended Complaint, Count 1, p. 12).

• "As a direct and proximate result of the Defendant's breach of contract, the Plaintiff suffered a loss of the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship with the Defendants [sic]. The assertions by both branch managers, which were both fabricated and capricious, prevented Pullins from exercising the full extent of her rights granted by the contract; specifically, being serviced without unnecessary hindrance or delay and access to the funds available in her account." R. Doc. 21 (Amended Complaint, ¶ 19.).[73]

Defendant contends the Deposit Agreement imposes no such obligations as alleged by Plaintiff above.  Rather, the Agreement expressly provides that customers must wait one business day after making a deposit to access their funds.[74]  Further, the Deposit Agreement allows Defendant to delay the funds for a longer period when the deposited check is over $5,000.[75]  Defendant contends Plaintiff has failed to allege any provision in the Deposit Agreement or any other purported contract between the Parties that would entitled her to access to deposited funds "on demand," "unhindered, without delay services," or the benefit/privilege of never having a hold placed on her account.[76]

Plaintiff claims that, just like in *Allen* and *Craig*, she was subjected to additional conditions imposed on the terms or benefits of her contract with Defendant because she had to wait to receive service, and she was treated suspiciously and allegedly endured a fraud investigation.  The Court finds Plaintiff's argument without merit under the applicable legal standard.

---

[73] Rec. Doc. No. 22-1, p. 14.
[74] Rec. Doc. No. 22-2, p. 25.
[75] *Id.* at pp. 5, 25.  Defendant notes that it also had authority under the Deposit Agreement to require Plaintiff provide it with at least a 7-day notice in writing before making the withdrawal, although it did not do so in this case.
[76] Rec. Doc. No. 22-1, p. 15.

64680

"A conclusory allegation that the right to make and enforce contracts has been violated is insufficient. Instead, a plaintiff must (1) 'identify the content of the contract at issue,' (2) identify 'the particular contractual rights' that were allegedly modified by the defendant's actions, and (3) plead facts showing that the defendant's actions were motivated by discriminatory intent."[77]

First, Plaintiff fails to identify the contract at issue, which is the Deposit Agreement. This failure alone is fatal.  Second, Plaintiff fails to identify any particular contractual rights modified by Defendant's conduct; indeed, despite alleging that the contract of mandate entitled her to access her funds "upon demand," she admits that access to her funds was provided in accordance with the provisions of the Deposit Agreement. The vague allegations that a "contract of mandate" was created between Plaintiff and Defendant when she opened the bank account and deposited funds, entitling her to demand access to the funds immediately, are belied by the actual contract between the parties – the Deposit Agreement – and Plaintiff's acknowledgement that the Deposit Agreement was a permissible basis to hold her funds:  "Plaintiff agrees that the Deposit Agreement, the Funds Act, and Regulation CC 'establishes maximum permissible hold periods for checks and other deposits.'"[78]  Despite this admission, Plaintiff contradictorily argues throughout her *Opposition* that it was impermissible and/or illegal for Defendant to deny access to her funds within the 24-hour period.[79]  The Court understands Plaintiff's argument that

---

[77] *Landor v. Society of the Roman Catholic Church of the Diocese of Lafayette*, 2014 WL 4639519, * 3 (W.D. La. Sept. 15, 2014)(quoting *Vouchides v. Houston Community College System*, 2011 WL 4592057, *8 (S.D. Texas Sept. 30, 2011)(citing *Grambling*, 286 F .Appx. at 870; *cf. Domino's*, 546 U.S. at 476 ("Any claim brought under § 1981, therefore, must initially identify an impaired "contractual relationship, § 1981(b), under which the plaintiff has rights."))).
[78] Rec. Doc. No. 29, p. 7 (citation omitted).
[79] *Id.*  at pp. 10, 12, 17, 18.
64680

Defendant's hold on her funds was allegedly motivated by her race rather than adherence to the Deposit Agreement, but the claim that Defendant had a duty under a contract of mandate or good faith and fair dealing to disburse her funds within the 24-hour delay period is simply meritless.

Second, the claim that Defendant modified the conditions of the contract or imposed additional restrictions not contemplated in the contract is also unsupported by factual allegations. Plaintiff never mentions or refers to any provisions of the Deposit Agreement in her *Amended Complaint*. Moreover, she fails to allege facts that non-minority bank customers seeking the same service under the same terms were not subjected to the same delays/holds. Accordingly, Defendant's *Motion to Dismiss* Plaintiff's 42 U.S.C. 1981 claim shall be dismissed with prejudice.

### D.    IIED Claim under La. C.C. art. 2315

A district court may decline to exercise supplemental jurisdiction over state law claims if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) there are other compelling reasons for declining jurisdiction, in exceptional circumstances.[80] These factors must be considered on a case-by-case basis, and no single factor is dispositive.[81] Generally, a district court "should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute."[82] In addition to the factors

---

[80] 28 U.S.C. § 1367(c).
[81] *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rough Par.*, 373 F. App'x 438, 442 (5th Cir. 2010).
[82] *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

64680

set out in § 1367(a), the court should consider judicial economy, convenience, fairness, and comity, and especially whether the court has invested a significant amount of resources in the litigation.[83]    These considerations include whether extensive or substantive motions have been filed and/or ruled on, whether a scheduling order has been issued, whether hearings have been held, the relative convenience of the relevant state and federal courthouses, and whether it will prejudice either party to have the state law claims heard in state court.[84]

While this Court has the authority and discretion to hear Plaintiff's IIED claim, the United States Supreme Court's decision in *United Mine Workers of America v. Gibbs*, instructs that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." [85]

The only remaining claim in this case is Plaintiff's IIED claim under Louisiana law. The Court has dismissed the remaining federal claim with prejudice. Thus, there is no independent basis for federal court jurisdiction over the remaining state law claim. This case is still at the pleading stage and has not advanced to discovery. No scheduling order has been issued.  And while the Court has previously issued a *Ruling* on the first *Motion to Dismiss*, the Court has not invested a significant amount of resources in this litigation.

---

[83] *Id.*
[84] *Hicks v. Austin Indep. Sch. Dist.*, 564 F. App'x 747, 749 (5th Cir. 2014).
[85] 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also W.R. Grace & Co. v. Continental Cas. Co.*, 896 F.2d 865, 871 (5th Cir.1990) ("Gibbs teaches that federal courts must refrain from unnecessary poaching upon a sovereign state's jurisprudential turf.").

Further, considering the docket backlog created in this Court by the COVID-19 pandemic, the Court finds that the best use of judicial resources for this Court and the state court is to have the state court preside over a purely state law claim. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's IIED claim, and it shall be dismissed without prejudice.

## III.    CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[86] by Defendant, Hancock Whitney Bank, is **GRANTED.** Plaintiff's 42 U.S.C. § 1981 claim is dismissed with prejudice. Plaintiff's IIED claim under La. C.C. art. 2315 is dismissed without prejudice. This dismissal is STAYED for thirty (30) days from the date of this *Ruling* in order to provide Plaintiff's counsel time to file this claim in state court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana January 11, 2021.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[86] Rec. Doc. No. 22.
64680

25